IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PEOPLECHART CORPORATION, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 21 C 31 |
| WINTRUST BANK, N.A., | ) ) ) |
| Defendant. | ) ) |

MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Peoplechart Corporation has sued Wintrust Bank alleging infringement of U.S. Patent No. 8,869,249 (the "'249 patent"). The patent contains claims for a method of protecting information on a computer system using multiple forms of authentication. Peoplechart alleges that "Cardless Cash"—Wintrust's mobile banking feature for a customer to withdraw funds from an ATM without a physical bank card—infringes its patent. Wintrust has moved to dismiss Peoplechart's patent infringement claim pursuant to Fed. R. Civ. P. 12(b)(6). Wintrust contends that Peoplechart's patent claims unpatentable subject matter under the Patent Act, 35 U.S.C. § 101, because it is based on abstract ideas and lacks an inventive concept, which is required to make it patent-eligible. For the reasons set forth below, the court grants Wintrust's motion to dismiss.

Background

Peoplechart is a California corporation. Wintrust is a financial services company that operates several banks in Illinois. The '249 patent was issued by the United States

Patent and Trademark Office on October 21, 2014 and has been assigned to Peoplechart. The patent includes twenty claims, all of which concern a process for protecting information stored on a computer server. See Pl.'s Ex. A, '249 Patent, col. 1:29-31 (dkt. no. 1-1). Peoplechart contends that Wintrust infringed at least the first claim—"Claim 1"—of the '249 patent through the services it provides by way of a program called Cardless Cash.

Wintrust rolled out its Cardless Cash program in 2015. In summary, it allows customers to withdraw money from an ATM using the Wintrust mobile banking app without a physical bank card. To withdraw money via the Cardless Cash service, a customer first logs into the app with his user login credentials. Then the customer can use the app to scan a unique QR code that appears on the ATM screen. The act of scanning the QR code on the Wintrust app essentially connects the ATM to the customer's bank account. This makes it possible for the customer to withdraw money from the ATM using only the app.

### A.   Peoplechart's patent claims

The '249 patent describes a method that "significantly reduces the risk of unauthorized access via the Internet to sensitive information." '249 Patent at 2:5-9. The method in claim 1 comprises four elements:

> (a) receiving, for a user, first user authentication information for a first authentication method;
> (b) receiving, for the user, second user authentication information for a second authentication method, the second authentication method being different from the first authentication method;
> (c) upon authenticating the first user authentication information and the second user authentication information, moving, by a computing device, a subset of data stored on a back-end storage device to a front-end storage device, the front-end storage device being directly connected to a user device for the user via a network and the back-end storage device not

> being directly connected to the network; and
> (d) allowing the user device access to the subset of data on the front-end storage device for a period of time specified to the front-end storage device by the computing device, wherein after the period of time expires, the subset of data is removed from the front-end storage device.

*Id.*, Abstract; *see also* Compl. ¶ 8 (dkt. no. 1). The patent also includes a schematic of a client-security system invoking this process:



'249 Patent, Fig. 1, 4:36-6:15. "A significant security feature . . . of the present invention is that there are two separate codes needed to access the user information: a voice print or a personal password . . . and a session ID which is specific to the particular access period." *Id.* at 8:25-29.

To summarize, a user wishing to access certain information via his personal computer or other device first calls customer service using a telephone to request access. Upon answering the call, the customer service provider authenticates that the caller is an authorized user by requesting information from the user to verify his identity. Authentication access information includes a user ID and personal password or a voice

3

print recording that matches a voice print of the user that is on record with the service provider. The service provider then receives the authorized user's scheduling request over the phone. The service provider schedules a "session"—a specific date, time, and duration for the user to access the requested information on his personal device—with a unique session ID. The back-end server generates the session ID, which the service provider shares with the user. The requested information is then moved from the back-end server to a front-end server on the user's personal computer for the scheduled session. The user can then access the requested information online on his personal computer. When the session expires, the information that the user requested is removed from the front-end server, and the user can no longer access it.

**B.     Wintrust's alleged infringement**

In the complaint, Peoplechart alleges that Wintrust has infringed and continues to infringe every element of "at least" claim 1 through its Cardless Cash method. *See* Compl. ¶¶ 9, 11.

First, Peoplechart alleges that Cardless Cash infringes element (a) of its patent—"receiving, for a user, first user authentication method." *Id.* ¶ 9(a). The first authentication method for Cardless Cash is the user's bank login credentials. *Id.* Peoplechart contends that the ATM "allow customers to withdraw cash using only their smartphones"—via the Cardless Cash service Wintrust's mobile banking app—"thus improving customers' experience, when it comes to simplicity, speed, and security." *Id.*

Next, Peoplechart says that Cardless Cash infringes element (b)—"receiving, for the user, second user authentication information for a second authentication method." *Id.* ¶ 9(b). "The second authentication information and method," Peoplechart alleges,

4

"is the generation of the QR code that is displayed on the ATM machine, and scanned by the user with the user's mobile phone." *Id.* Peoplechart contends that Wintrust's two-factor authentication process provides the same "added security" that the '249 patent is intended to address. *Id.*

Peoplechart also contends that Cardless Cash infringes element (c) of the '249 patent—"upon authenticating . . . moving, by a computing device, a subset of data stored on a back-end storage device to a front-end storage device. . . ." *Id.* ¶ 9(c). Other than this contention, Peoplechart does not plead any specific facts regarding Wintrust's alleged infringement of the third element.

Finally, Peoplechart alleges that Cardless Cash infringes element (d)—"allowing the user device access to the subset of data on the front-end storage device for a period of time. . . ." *Id.* ¶ 9(d). Specifically, Peoplechart alleges, "[a]fter completing the authentication step using the QR code scanning process with the user's mobile device, the Wintrust Cardless Cash system allows the user access at the user's selected ATM device to enable cash to be dispensed." *Id.*

On October 2, 2020, Peoplechart sent Wintrust a letter in which it informed Wintrust of the '249 patent and that Wintrust's actions constituted infringement. *Id.* ¶ 10. On January 4, 2021, Peoplechart filed the present lawsuit, asserting a single claim of patent infringement. Compl. ¶¶ 10-18. Peoplechart seeks damages under 35 U.S.C. § 284 and other relief for "either directly or indirectly" and "willful[ly]" infringing "at least Claim 1 of the '249 Patent." *Id.* ¶¶ 11, B-E. It also alleges that Wintrust "has acted with specific intent to induce or cause infringement." *Id.* ¶ 16.

5

## Discussion

On a motion to dismiss for failure to state a claim, the Court takes the plaintiff's factual allegations as true, draws reasonable inferences in the plaintiff's favor, and assesses whether the plaintiff has asserted a plausible basis for relief. *See, e.g.*, *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 826 (7th Cir. 2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Federal Rule of Civil Procedure 8(a) requires a plaintiff to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Under this standard, a plaintiff who seeks to survive a motion to dismiss must plead some facts that suggest a right to relief that is beyond the speculative level." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (internal quotations omitted). "While detailed factual allegations are not necessary to survive a motion to dismiss, it does require more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate." *Id.* (internal quotations omitted).

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor. . . ." 35 U.S.C. § 101. The Supreme Court has recognized that section 101 "contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70-72 (2012).

The Supreme Court has established a two-part framework, known as the *Alice/Mayo* inquiry, for determining patent eligibility. A claim is not patent eligible under

section 101 where it is: (1) "'directed to' a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea" and (2) "the particular elements of the claim, considered 'both individually and as an ordered combination,' do not add enough to 'transform the nature of the claim' into a patent-eligible application.'" *SAP Am., Inc. v. InvestPic, Inc.*, 898 F.3d 1161, 1166-67 (Fed. Cir. 2018) (quoting *Alice*, 573 U.S. at 217-18).

Step one of the *Alice/Mayo* inquiry "looks at the focus of the claims" and "their character as a whole." *SAP Am.*, 898 F.3d at 1167 (internal quotations omitted). Step two, if reached, is a "search for an inventive concept." *Alice*, 573 U.S. at 217 (quotation marks omitted). Specifically, the Court will examine "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.* at 217-18 (quotations omitted).

Peoplechart's complaint only describes Wintrust's alleged infringement of "claim 1," *see* Compl. ¶¶ 8-9, but the '249 patent covers twenty claims. Because the remaining claims are "substantially similar and linked to the same abstract idea" of claim 1, the Court may analyze the "representative" claim in a § 101 analysis. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348 (Fed. Cir. 2014) (internal quotations omitted).

A. **Patent eligibility determinations on a Rule 12(b)(6) motion**

Peoplechart contends that there are factual disputes regarding claim language that are critical to the section 101 issue and that cannot properly be resolved at the motion to dismiss stage. Pl.'s Resp. Br. at 11 (dkt. no. 15). Specifically, Peoplechart

points out that there are factual issues regarding the specification, which "explicitly states that the invention solves a technical problem that 'conventional web servers' could not." *Id.* at 10. Peoplechart says that resolving the "critical factual dispute" about "what a 'conventional web server' is and whether the '249 Patent can be practiced using only a conventional web server" is dependent on "claim construction." *Id.* at 13.

Wintrust, in contrast, contends that there are no factual disputes preventing this Court from holding the representative claim patent-ineligible. First, Wintrust addresses Peoplechart's argument that "there are factual disputes as to whether the claimed 'back-end storage device' is well-understood, routine, and conventional." Def.'s Reply Br. at 13 (dkt. no. 23). In response to this contention, Wintrust says that the '249 patent "itself rebuts this argument by claiming this component"—referencing the back-end storage device—"generically along with conventional storing and moving operations." *Id.*

The Federal Circuit has held that "[e]ligibility under 35 U.S.C. § 101 is a question of law, based on underlying facts." *SAP Am., Inc.*, 898 F.3d at 1166. Furthermore, it has "frequently . . . resolved" the question of patent eligibility on a Rule 12(b)(6) motion. *Id.* "Claim construction is not an inviolable prerequisite to validity determinations under § 101." *Genetic Techs., Ltd. v. Merial LLC*, 818 F.3d 1369, 1374 (Fed. Cir. 2016) (quotations omitted and alterations accepted). As such, the Federal Circuit has "repeatedly affirmed § 101 rejections at the motion to dismiss stage, before claim construction or significant discovery has commenced." *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017).

In *Content Extraction*, the Federal Circuit encountered the same issue Peoplechart raises in this case. *See Content Extraction*, 776 F.3d at 1349. The plaintiff

in that case contended that the district court "erred by declaring its claims patent-ineligible under § 101 at the pleading stage without first construing the claims or allowing the parties to conduct fact discovery and submit opinions from experts supporting their claim construction positions." *Id.* The Federal Circuit acknowledged that "the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter," but it reiterated the principle that "claim construction is not an inviolable prerequisite to a validity determination under § 101." *Id.* It also recognized that the "district court construed the terms identified by the [plaintiff] in the manner most favorable to [it]." *Id.* (internal quotations omitted). It left untouched the district court's determination that "the claims of the asserted patents were patent-ineligible." *Id.* ("Likewise, we conclude that even when construed in a manner most favorable to [plaintiff], none of [plaintiff]'s claims amount to 'significantly more' than the abstract idea of extracting and storing data from hard copy documents using generic scanning and processing technology."). Thus the Federal Circuit concluded that the "district court's resolution of [defendant]'s motion to dismiss at the pleading stage was therefore proper." *Id.*

In another case, *Cleveland Clinic*, the Federal Circuit upheld the district court's determination of a section 101 issue at the motion to dismiss stage and rejection of the plaintiff's argument that "the district court should first conduct formal claim construction on some identified terms." *Cleveland Clinic*, 859 F.3d at 1358, 1360. The Federal Circuit accepted the district court's rationale for deciding the section 101 issue on a motion to dismiss—the "plaintiff offered no proposed construction for these terms"—and its decision to proceed to the *Alice/Mayo* two-part framework. *Id.* (quotations omitted

9

and alterations accepted).

As in *Cleveland Clinic*, Peoplechart has not provided any proposed construction of the term "conventional web servers" or any other terms it associates with the purported factual dispute. *See* Pl.'s Resp. Br. at 10-16. Accordingly, in this case, the Court sees no barrier to addressing on a Rule 12(b)(6) motion whether the '249 patent is ineligible under section 101. The Court will construe the facts and claims in the light most favorable to Peoplechart.

**B.** *Alice/Mayo* **inquiry**

Wintrust argues that the '249 patent is ineligible for patenting because it is an uninventive application of an abstract idea. Peoplechart disputes this.

**1.** *Alice/Mayo* **step one**

Wintrust argues that the representative claim is directed to the abstract idea of "permitting access to stored information for a limited period of time." Def.'s Opening Mem. at 5 (dkt. no. 10). "Claim 1 of the '249 patent . . . merely recites authenticating a user, allowing access to data, and time-restricting that access, which is . . . abstract under *Alice* step 1." *Id.* at 8.

Peoplechart relies on two Federal Circuit cases, *Enfish* and *Ancora*, to support its contention that its claims, which cover a method of protecting information by requiring multiple authentications for access, "cover a concrete solution, not an abstract idea." Pl.'s Resp. Br. at 7. Peoplechart contends that the claimed invention improves existing computer security functionality by reducing the risk of unauthorized access to sensitive information. *Id.* at 7-10; *see Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338 (Fed. Cir. 2016) (acknowledging that computer technology improvements are patent eligible,

10

but "generalized steps to be performed on a computer using conventional computer activity" are considered abstract ideas); *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1344-46 (Fed. Cir. 2018) ("Improving security . . . can be a non-abstract computer-functionality improvement if done by a specific technique that departs from early approaches to solve a specific computer problem.").

Although improvements to computer technology and security can be non-abstract, Peoplechart's claimed method is not an invention of a novel computer security functionality or a "specific technique that departs from earlier approaches to solve a specific computer problem." *Ancora*, 908 F.3d at 1348-49. Unlike "[t]he claimed method" in *Ancora*, a "verification structure" that "specifically identifie[d] how [a computer] functionality improvement [was] effectuated in an assertedly unexpected way," Peoplechart neither makes such a claim nor explains how its method departs from existing approaches to secure information through a combination of steps involving hardware and software. *Id.* at 1348.

All in all, Peoplechart's claim concerns "generalized steps to be performed on a computer using conventional computer activity" and "invoke[s]" computers "merely as a tool." *Enfish*, 822 F.3d at 1336, 1338. The claimed method does not "assert[] improvement in computer capabilities." *Id.* at 1336. Peoplechart's reliance on *Enfish* and *Ancora* therefore lacks merit.

Moreover, to the extent that Peoplechart's claim is directed at using multiple authentication methods for information security, this Court joins several other courts, including the Federal Circuit, in concluding that the claim is directed to an abstract idea. *See, e.g.*, *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15 C 478, 2016 WL

3670804 (E.D. Va. July 5, 2016), *aff'd*, 737 F. App'x 539 (Fed. Cir. 2018) (affirming district court's ruling that patent related to method of multi-factor authentication over various communication mediums was invalid). The district court's *Asghari* decision states, in relevant part:

> [a]ll of the claims in the '432 patent require the use of a computer. . . . However, despite the electronic setting and purportedly Internet specific problem addressed, the patent claims are directed to a common method for solving an old problem. The claims are directed to the abstract idea of using a third party and a random, time-sensitive code to confirm the identity of a participant to a transaction. This formulation is admittedly verbose. It is verbose because the patent claims combine two abstract ideas: the use of a third party intermediary to confirm the identity of a participant to a transaction and the use of a temporary code to confirm the identity of a participant to a transaction. It is an obvious combination, and nothing about the combination removes the patent claims from the realm of the abstract.

*Id.* at *4; *see also Strikeforce Techs., Inc. v. SecureAuth Corp.*, 17 C 4314, 2017 WL 8808122, at *4 (C.D. Cal. Dec. 1, 2017), *aff'd*, 753 F. App'x 914 (Fed. Cir. 2019) (patent involving "multichannel security systems and methods for authenticating a user seeking to gain access to a secure network" is abstract); *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 F. App'x 1014, 1016-17 (Fed. Cir. 2017) ("systems and methods that control access to protected computer resources by authenticating identity data" are directed to the abstract idea of "providing restricted access to resources") (internal quotations omitted); *Universal Secure Registry LLC v. Apple Inc.*, 469 F. Supp. 3d 231, 237 (D. Del. 2020) ("claim . . . is directed to the abstract idea of obtaining the secure verification of a user's identity to enable a transaction" based on "well-known methods using conventional computer components"); *Money & Data Protection Lizenz GMPH & Co. KG v. Duo Security, Inc.*, 469 F. Supp. 3d 674 (D. Del. 2020) ("the detection of an authentication function's activity and the activation by users of an authentication function

within a pre-determined time relation were well-understood and routine, conventional activities previously known in the authentication technology field"); *Smart Authentication IP, LLC v. Electronic Arts Inc.*, 402 F. Supp. 3d 842 (N.D. Cal. 2019).

Peoplechart contends that its claim differs from those in other cases involving claims directed at multiple-factor authentication, because its method of securing information is better than "the typical Web site" which "has minimal security" because it "has the user's information stored on an on-line database connected to the Web server." '249 Patent at 1:43-51. Peoplechart argues that because its claimed method involves storing the data on a back-end server and making it available online via the user's personal device only after the user engages multiple forms of authentication, it is non-abstract.

But this distinction alone is insufficient to differentiate the representative claim from the generally abstract idea to which it is directed. The practice of storing data in one place—such as a storage device—and moving it to another place for a user to readily access is well-established. *See, e.g.*, *West View Research, LLC v. Bayerische Motoren Werke AG*, 226 F. Supp. 3d 1071, 1078 (S.D. Cal. 2016) (observing that "the asserted claims are directed at identifying an authorized user and providing information to that user" and determining that "the concept of identifying a system user and then delivering user-specific content to that user's portable electronic device is an abstract idea"); *see also Secured Mail Solutions LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 910-12 (Fed. Cir. 2017) (the "asserted claims" which involve scanning a barcode on a mail object and "data corresponding to the sender [being] sent to the recipient over the network and displayed on the recipient's device" is a "process [that] is directed to the

13

abstract process of communicating information").

Having concluded that the '249 patent is directed to an abstract idea, the Court turns to the second step of the *Alice/Mayo* inquiry.

### 2. *Alice/Mayo* step two

At step two, the Court inquires whether the patent includes an inventive concept. *See Alice*, 573 U.S. at 217-18. This requires searching for "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* at 218 (quotations omitted and alterations accepted). Claims that "do not require an arguably inventive set of components or methods, such as measurement devices or techniques, that would generate new data"; "do not invoke any assertedly inventive programming"; or "do not . . . require a new source or type of information, or new techniques for analyzing it" fail to recite an inventive concept. *Electric Power Group, LLC v. Alstom S.A.*, 830 F.3d 1350, 1355 (Fed. Cir. 2016) (quoting *Bascom Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-52 (Fed. Cir. 2016)).

Furthermore, claims that "do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,'" and "merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices" are insufficient. *Electric Power*, 830 F.3d at 1355. The Federal Circuit has "repeatedly held" that the "invocations of computers and networks that are not even arguably inventive are insufficient to pass the test of an inventive concept in the application of an abstract idea. *Id.* (collecting cases).

14

Wintrust argues that Peoplechart's representative claim "recites only generic functional limitations and generic computer components that are nothing more than the abstract idea using routine and conventional practices."  Def.'s Opening Mem. at 9.  Further, it contends that the "receiving" authentication steps, '249 Patent at 9:39-44, "are purely functional and do not place any limitations on the authentication, other than that they are 'different.'"  Def.'s Opening Mem. at 9 (quoting '249 Patent at 9:39-44).  The next two steps, Wintrust contends, "refer to only conventional, generic components, such as a 'computing device,' 'user device,' and 'storage device[s],' that are not sufficient to transform an abstract idea into patent-eligible subject matter."  Def.'s Opening Mem. at 9 (quoting '249 Patent at 9:45-47) (alterations in original).  Accordingly, Wintrust says, the "'249 patent does not describe improvements or modifications to these generic components or steps . . . but instead confirms their generic nature"; it also points out that the '249 patent is "not directed to an improvement in computer technology."  Def.'s Opening Mem. at 9-10.  Rather, it "relies on generic hardware and software, and thus does not require any specialized components or modifications to existing conventional components."  Id. at 10.

In response, Peoplechart argues that Wintrust's contentions "directly contradict[] the '249 Patent" which explains that the elements of the representative claim "reduces the exposure to hackers compared to the conventional Web server."  Pl.'s Resp. at 11.  As such, Peoplechart contends, "[t]he concrete limitations of the Asserted Claims are based on inventive concepts that provide tangible benefits and solve real-world problems, further confirming that they are patent eligible."  Id. at 12.

Peoplechart's contentions are not persuasive.  The representative claim of the

15

'249 patent describes a "particular series of transactions and steps," '249 Patent at 9:11-12, involving a "particular combination of [existing] hardware and software," '249 Patent at 14-15.  It "do[es] not contain any arguably or purportedly inventive features."  *Checksum Ventures, LLC v. Dell Inc.*, 412 F. Supp. 3d 906, 918 (N.D. Ill. 2019).  "Combining . . . functions" that "[c]omputers have long been able" to do "does not an invention make."  *Id.*

*Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528 (Fed. Cir. 2021) is instructive here.  In *Stripe*, the owner of several patents for facilitating online transaction payments brought an infringement action against a competitor, who moved to dismiss.  *Id.* at 529-31.  In the district court, the patent owner argued that its patents, which were "generally directed to systems and methods for confirming that a transaction has been consummated prior to releasing electronic payment," solved the problem that arises when a "buyer may not wish to authorize payment before the parties have met and the buyer has an opportunity to inspect and take possession of the goods."  *Id.* at 529.  By "providing an Internet-based system, such as an online marketplace that facilitates payments between buyers and sellers," the patent owner conveyed that the methods provided a way to "reliably confirm that a local marketplace transaction has been consummated to facilitate reliable online payment consummation."  *Id.*  The patent owner also argued that the claims recited an inventive concept—increasing online payment security—which was sufficient to show that the claims are "not routine and conventional."  *Id.* at 533.

The district court concluded, and the Federal Circuit agreed, that the claims did not include an inventive concept.  The Federal Circuit explained that the "order and

16

timing of the claim elements are merely the necessary steps of executing payment escrow and so do not constitute an inventive concept." *Id.* Further, the Federal Circuit held that "the use of the buyer identifier to confirm consummation of the transaction serves only to authenticate the transaction and is not rooted in a technological problem or solution." *Id.*

In this case, the representative claim—regardless of whether it purports to overcomes the limitations of conventional web servers—is not rooted in a technical solution. Rather, the representative claim reflects that Peoplechart is performing steps by using "already available computers, with their already available basic functions . . . as tools in executing the claimed process." *SAP Am., Inc.*, 898 F.3d at 1169-70; *see also Checksum Ventures,* 412 F. Supp. 3d at 918 ("the core claim of this patent has little to do with the purported inventive concepts regarding verification and authentication—it merely provides a mechanism for performing the abstract idea of computing algorithms and storing output") (internal quotations omitted); *In re TLI Commc'ns Patent Litig.*, 823 F.3d 607, 613 (Fed. Cir. 2016) ("It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.").

The Court concludes that the patent does not recite an inventive concept sufficient to transform the representative claim into patent-eligible subject matter under 35 U.S.C. § 101. Wintrust is therefore entitled to dismissal of the complaint. Because the patent is directed to subject matter that is not patent eligible as a matter of law, leave to amend would be futile. Accordingly, the dismissal is with prejudice. *Maxon, LLC v. Funai Corp., Inc.*, 255 F. Supp. 3d 711, 722 (N.D. Ill. 2017), *aff'd*, 726 F. App'x

797 (Fed. Cir. 2018).

## Conclusion

For the foregoing reasons, the Court grants Wintrust's motion to dismiss [dkt. no. 9] and directs the Clerk to enter judgment dismissing this case with prejudice.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: June 9, 2021